# EXHIBIT B

FILED
SEP 18 2026 R
RANDY CARNEY, CLERK
BY____________________D.C.

# Jackson County Grand Jury Report September 14-18, 2026

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI**
**19TH CIRCUIT COURT DISTRICT**

**IN RE: DEATH INVESTIGATION**
**OF NOLAN XAVIER WELLS**

---

## GRAND JURY REPORT

---

The Jackson County Grand Jury was impaneled on April 20, 2026, reconvened on September 14, 2026, and adjourned on September 18, 2026. The Grand Jury finds that the death of Nolan Xavier Wells on or about July 4, 2026, in Jackson County, Mississippi, being of great public concern, is within the Grand Jury's investigative authority. The Grand Jury engaged in a thorough and complete investigation into the death of Mr. Wells. Our sworn duty is to allow or deny issuance of an indictment. As the foreperson of the Grand Jury, I report that the Grand Jury unanimously returns a No True Bill with respect to the death investigation of Nolan Xavier Wells.

Pursuant to Rule 13.6 of the Mississippi Rules of Criminal Procedure, the Grand Jury is authorized to issue a report of its findings related to the death investigation of Mr. Wells, and said report is being filed with the Circuit Clerk of Jackson County, Mississippi.

Pursuant to Rule 13.5 of the Mississippi Rules of Criminal Procedure, a Grand Juror, except when called as a witness in court, shall keep secret the proceedings and actions taken in reference to matters brought before the Grand Jury for six (6) months after final adjournment of the Grand Jury, and the name and testimony of any witnesses appearing before the Grand Jury shall be kept secret. The date of final adjournment of the Grand Jury is unknown as of the date of this report.

The Grand Jury was impaneled pursuant to Rule 13.1 of the Mississippi Rules of Criminal Procedure, consisting of twenty-five (25) Grand Jurors from a cross section of citizens of Jackson County, Mississippi. Two (2) Grand Jurors requested to be excused from this session for unavoidable and urgent reasons. The twenty-three (23) Grand Jurors that heard this matter ranged in age from twenty-seven (27) to sixty-eight (68) years of age and included thirteen (13) males, ten (10) females, twelve (12) Caucasians, five (5) African Americans, one (1) Asian, two (2) Hispanics, two (2) Native Americans, and one (1) individual who preferred "other."

The Grand Jury was expressly charged by the impaneling Circuit Judge with not only being the means of bringing to trial those people who are accused of a crime, but "also to protect persons from unfounded accusations whether presented by legal officers or by others who may be motivated by public clamor or private malice."

The District Attorney advised the Grand Jury as to all relationships and interactions of any kind amongst the various individuals involved in the case, including witnesses, investigators, or prosecutors. The Grand Jury finds no conflicts of interest in the investigation and presentation of this matter.

The Grand Jury issued one hundred thirty-two (132) subpoenas and heard from forty-three (43) witnesses. Seven (7) individuals were invited to testify before the Grand Jury. [redacted], [redacted], [redacted], [redacted], and [redacted] accepted the Grand Jury's invitation and testified in this matter. [redacted] was also invited and wished to testify, but was unable due to circumstances outside of [redacted] control. The Grand Jury did consider [redacted] recorded statement to law enforcement in its deliberations. [redacted] did not accept the Grand Jury's invitation to testify. The Grand Jury did consider [redacted] recorded statement to law enforcement in its deliberations.

The Grand Jury, through the District Attorney's Office, made written requests to the family of Mr. Wells and their legal team to produce any evidence collected in their independent investigation into the death of Mr. Wells. [redacted], on behalf of Mr. Wells' family, advised that their investigation revealed no witnesses or evidence "whom the legal team reasonably believes possess information germane to potential criminal activity that warrants referral to your office [the District Attorney's Office]." Further, the family did not request that any "additional document, recording, photograph, digital media, report, or other material in the legal team's possession be submitted to the Grand Jury." The Grand Jury received a fourteen (14) page report concerning Mr. Wells' cellular phone prepared by the families' own forensic examiner, Garrett Discovery Inc., entitled "Mobile Device Examination Findings Preliminary Report" that was provided to the District Attorney on August 28, 2026. After the Grand Jury convened to hear this matter, the Grand Jury received a twenty-one (21) page "mobile device examination findings – device lock state, screen activity, messages, calls, location, and application usage…final report"

and a two-hundred sixty-one (261) page "Snapchat Conversation Report." The Grand Jury considered these reports in its investigation into the death of Mr. Wells. The Grand Jury also received copies of all correspondence between the District Attorney and the legal team for Mr. Wells' family.

The Grand Jury had full and open access to the complete investigative file of the Jackson County Sheriff's Office, which included materials from all law enforcement agencies who assisted in the Death Investigation of Mr. Wells. The Grand Jury considered, *inter alia*, the following:

- Testimony of witnesses;
- Physical evidence collected during the investigation;
- Digital evidence collected during the investigation;
- Reports generated during the investigation;
- Interviews and recorded statements collected during the investigation;
- Images collected during the investigation;
- Videos/recordings collected during the investigation;
- Maps collected/generated during the investigation;
- Global Positioning System (GPS) and location data collected during the investigation;
- Cellular phone extractions collected during the investigation; and
- Responses to subpoenas duces tecum.

In addition to the reports from Mr. Wells' family's legal team from their forensic examination of Mr. Wells' cellular phone, the Grand Jury heard sworn testimony of forensic pathologist Dr. [redacted]. Dr. [redacted] was retained by the Wells family to conduct an independent autopsy. The Grand Jury is aware that Dr. [redacted] was provided full and complete access to all investigative materials. Dr. [redacted] also visited Horn Island with law enforcement and District Attorney staff and met with the Chief Medical Examiner for the State of Mississippi, Dr. [redacted], at the Mississippi Forensics Laboratory. Dr. [redacted] was given full access to examine Mr. Wells' internal neck structures retained by the medical examiner and his request for the making of additional slides for histological study was fulfilled. Dr. [redacted] confirmed that the retention of this tissue is appropriate and best practice in forensic pathology. Dr. [redacted] also dispelled rumors about various other organs, including the lungs and stomach, being retained. Dr. [redacted] confirmed that he received all of Mr. Wells' body parts, except for the internal neck structures appropriately retained by the medical examiner. The Grand Jury finds that Mr. Wells did

not have cocaine in his system at the time of his death and found no evidence to suggest Mr. Wells ever used cocaine. The Grand Jury considered the toxicology report in this matter which supports witness accounts about Mr. Wells from July 4, 2026, but understands the toxicology is not particularly informative as decomposition fluid is an unreliable source for evaluating substance levels within a body.

Both the State of Mississippi Chief Medical Examiner and Dr. [redacted] opined that the cause and manner of Mr. Wells' death is undetermined and that drowning is a diagnosis of exclusion. There was bruising on the back of Mr. Wells' head which was not a fatal injury. Further, the Grand Jury found no evidence of any fatal injury or organic disease to Mr. Wells' body. The State of Mississippi's Chief Medical Examiner and Dr. [redacted] disagree about the presence of bruising (non-deep tissue) on Mr. Wells' buttocks and shoulder. The Grand Jury considered credible evidence concerning the circumstances of how Mr. Wells sustained the injury to the back of his head, but the exact cause of the injury remains uncertain. A witness testified under oath that he saw Mr. Wells slip awkwardly off the side of a boat around the time of 3:30 p.m. on July 4, 2026, but could not say whether Mr. Wells struck his head during the fall. The witness testified that Mr. Wells continued to socialize after the fall and did not appear injured. The Grand Jury understands that neither forensic expert has ruled out accidental drowning as a cause of Mr. Wells' death. While the Grand Jury found no other evidence to explain the bruising on the back of Mr. Wells' head, or the suspected bruising on his buttocks and shoulder, the Grand Jury cannot say with absolute certainty that this fall caused this bruising.

The Grand Jury finds that Mr. Wells accompanied a group of friends to Horn Island on July 4, 2026. This group of friends traveled on three (3) different boats: the Triton, the Palm Beach, and the Tideline. Mr. Wells traveled to Horn Island on the Triton. [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], and [redacted] traveled to or from Horn Island on the Triton. [redacted], [redacted], [redacted], and [redacted] rode either to or from Horn Island on the Palm Beach. [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], [redacted] and [redacted] either rode to or from Horn Island on the Tideline.

The Grand Jury finds that Mr. Wells chose to remain at Horn Island on the afternoon of July 4, 2026, after the Triton, the Palm Beach, and the Tideline departed the island. Other individuals, including Mr. Wells, remained at the island to socialize. The Grand Jury finds no credible evidence to support the public allegations that any persons who rode to or from Horn Island on July 4, 2026, on the Triton, the Palm Beach, or the Tideline engaged in any criminal conduct related to the death of Mr. Wells. The allegations against the occupants of the Triton, the Palm Beach, and the Tideline are not based in truth, and are solely the result of public clamor and private malice. Further, the public clamor and malicious allegations against the occupants of the Triton, the Palm Beach, and the Tideline have extended to their family members and friends. The Grand Jury finds that the public attacks on the occupants of the Triton, the Palm Beach, and the Tideline, as well as their family and friends, are malicious, false, and have no truth in fact or evidence.

The Grand Jury received the original Sea Tow call made by occupants of the Triton on July 4, 2026. The Grand Jury finds that the various Sea Tow calls and interpretations of the call circulating on the internet and social media are not true and accurate.

The Grand Jury recognizes that it is common for individuals visiting Horn Island to socialize on boats and in the water. The Grand Jury finds that it is not unusual or suspicious for individuals to return from the island on boats they did not travel to the island on; nor is it unusual for individuals to place their phones and personal items on other boats they visit and socialize on. The Grand Jury finds that Mr. Wells' phone was not the only phone to travel back to the mainland without its owner.

The Grand Jury finds that Mr. Wells attended a pool party on July 3, 2026, and a week prior. The Grand Jury finds that the pool party images widely circulating on social media and other internet platforms were not taken the night of July 4, 2026, and have no evidentiary value to the death investigation of Mr. Wells.

The Grand Jury finds that Mr. Wells purchased his alcohol with his fake identification card. The Grand Jury further finds that no individuals over the age of twenty-one (21) provided alcohol to Mr. Wells or his friends on July 4, 2026.

The Grand Jury finds that the Triton had a bilge pump and motor malfunction on July 4, 2026, and was actively taking on water and sinking. The Grand Jury finds that the Triton was towed for a short distance by the Tideline allowing the water to drain from the boat interior while a passenger manually held the motor trim button down.

The Grand Jury finds that there was a thorough search of Horn Island on July 5, 2026, in advance of the discovery of Mr. Wells' body. The Grand Jury is confident that had his body been on the island at that time, it would have been discovered during the extensive search.

The Grand Jury recognizes there have been public assertions that Mr. Wells was the only African American individual on Horn Island on July 4, 2026. The Grand Jury finds that Mr. Wells was not the only African American on Horn Island that day. These false assertions have led to misidentification, speculation, and rumors concerning the death of Mr. Wells.

The Grand Jury finds that GPS data and security footage confirm the accounts of the passengers on the Triton, Palm Beach, and Tideline.

The Grand Jury finds that Mr. Wells was not in any physical altercation or argument on July 4, 2026.

The Grand Jury finds that the individuals who traveled to or from Horn Island on the Triton, Palm Beach, and Tideline cooperated fully with this investigation, including offering marine GPS devices, surveillance footage, cell phones, and statements to law enforcement officers and Mr. Wells' family during this investigation.

The Grand Jury finds that the position of, the condition of, time of discovery, and location of Mr. Wells' body is consistent with drowning.

The Grand Jury finds that Mr. Wells chose to remain on Horn Island after the boat he arrived on departed, which is common for visitors to Horn Island on holidays and other crowded days.

The Grand Jury conducted a comprehensive inquiry into the death of Mr. Wells and is confident in the extensive investigation done by both Federal and State law enforcement agencies.

The Grand Jury acknowledges that there is no statute of limitations on homicide cases in the State of Mississippi. If credible evidence comes to light in the future that suggests Mr. Wells' death was non-accidental, this matter should be represented to the Jackson County Grand Jury for further consideration.

The Grand Jury wishes to extend our deepest and heartfelt sympathy to the parents, family members, and friends of Mr. Wells. The evidence received in this matter convinced the Grand Jury of Mr. Wells' outstanding character.

The Grand Jury wishes to thank the Court for the opportunity to serve our community in this important role and encourages citizens to serve when called upon.

---

COUNTY OF MISSISSIPPI

COUNTY OF JACKSON

PERSONALLY, appeared before me, the undersigned authority in and for the jurisdiction aforesaid, [redacted], Grand Jury Foreperson, who after being sworn by me, states on his oath and certifies that, to the best of [redacted] knowledge, the foregoing represents a true and correct report of the Grand Jury impaneled April 20, 2026, Grand Jury, being recalled on September 14, 2026.

[redacted]

Grand Jury Foreperson

Sworn and subscribed before me on this the 18th day of September, 2026.

Randy Carney, Circuit Clerk

By: [redacted]

Deputy Clerk

RANDY CARNEY
CIRCUIT CLERK
JACKSON COUNTY, MS
MY COMMISSION EXPIRES: DEC 31. 2027

The following is a certified list of witnesses who appeared before the September 14, 2026, Grand Jury.

| | | |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | | |

STATE OF MISSISSIPPI
COUNTY OF JACKSON

PERSONALLY, appeared before me, the undersigned authority in and for the jurisdiction aforesaid, [redacted], Grand Jury Foreperson, who after being sworn by me, states on his oath and certifies that, to the best of [redacted] knowledge, the foregoing represents a true and correct list of witnesses appearing before the impaneled April 20, 2026, Grand Jury, being recalled on September 14, 2026.

[redacted]
Grand Jury Foreperson

Sworn and subscribed before me on this the 18th day of September, 2026.

Randy Carney Circuit Clerk

By: [redacted]
Deputy Clerk

RANDY CARNEY
CIRCUIT CLERK
JACKSON COUNTY, MS
MY COMMISSION EXPIRES: DEC 31, 2027